UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

THE UNITED STATES OF AMERICA,

                        Plaintiff,                  Criminal No. 12-20612

v.                                         Honorable Bernard A. Friedman

EVERETT SEAY,

                        Defendant.
_____/

### Government's Sentencing Memorandum

The United States of America submits its sentencing memorandum regarding defendant Everett Seay.

For the reasons set forth below, the government requests that the court impose a guideline sentence of between 37 and 46 months of incarceration. The government also requests that the court impose forfeiture of $10,800 as a money judgment, in accordance with the plea agreement and preliminary order of forfeiture entered in this case (R. 27).

### I. Factual statement

On March 26, 2013, defendant Everett Seay entered a guilty plea to Count Two of the Indictment in this case, which charged him which soliciting and

accepting several bribes in 2008, totaling $10,800, in his capacity as a member of the Pontiac, Michigan City Council.

Mr. Seay received these bribes (and another $15,000 in 2009) in return for his assistance in pushing through a city ordinance to permit certain parties to establish a gold purchasing business in Pontiac. Unbeknownst to Seay and his codefendants, Richard Clanagan and Roscoe Johnson, the parties he was dealing with were undercover FBI agents conducting a sting operation.

In May, 2008, a cooperating witness introduced Everett Seay to "James Brandt." Brandt was actually an undercover FBI agent, posing as a Chicago businessman who wanted to set up a gold purchasing business in Pontiac. Between May, 2008 and November, 2009, Brandt had numerous meetings and conversations with Seay, in which they discussed among other things the business Brandt wanted to set up and what it would take to get the backing of at least four of the seven members of the city council. In the course of these dealings, Brandt indicated to Seay that he was actually a drug dealer, and that the real purpose of the business would be to launder money. Brandt also introduced Seay to two associates who were also undercover FBI agents, "Brent Taylor" and "Gus Stamos." During these dealings Brandt began to make bribe payments to Seay, totaling approximately $4,800. In addition they discussed additional payments that Seay said would be necessary to get other council members to support the ordinance.

2

These dealings led to a meeting on November 9, 2008, at a suite at the Palace of Auburn Hills, during a Pistons basketball game. One purpose of the meeting was for Seay to bring and introduce other council members to Brandt and his associates, to get their support for the ordinance. Brandt and the other undercover agents attended the meeting. Seay brought Richard Clanagan (an associate and political advisor), Roscoe Johnson (an old friend) and another associate. One other Pontiac councilman also attended.

During the meeting, Brandt had private discussions with Seay, and the other councilman who attended, about the money payments that would be necessary to obtain their support for the ordinance. Seay told Brandt that the other councilman did not want to receive his payment at the Palace. So Brandt directed "Gus Stamos" to put an envelope with the agreed amount, $6,000, in Clanagan's jacket pocket, with the understanding that it would be split up later.

After the basketball game, Seay, Clanagan, and Johnson went to Clanagan's chess club in Pontiac. Clanagan turned over the envelope with the $6,000 to Seay, who gave approximately $500 each to Clanagan and Johnson for their assistance. Seay instructed Clanagan to pass $3,000 of the money along to the other councilman, and Seay kept the rest for himself. Both Clanagan and Johnson understood that they were assisting in a bribe transaction.

Clanagan attempted in the next few days to make the payment to the other councilman, but it was refused. Seay ended up keeping that $3,000 for himself. Over the next several months, Seay and Clanagan had many ongoing dealings with Brandt, Taylor, and Stamos relating to getting the necessary approvals and ordinance for Brandt's gold business. During these dealings Clanagan was aware that Seay expected an additional bribe payment for himself, and purportedly for other council members. Eventually, on October 29, 2009, the Pontiac City Council passed the regulated use ordinance that would permit the business to operate. Subsequently, on December 23, 2009, "Brent Taylor" made a final payment of $15,000 to Seay, that was purportedly to be split with other council members. At that meeting, after the payment was made, FBI agents confronted and interrogated Seay about what he had done, and took back the money.

Based on these facts, the plea agreement contains stipulated sentencing guideline computations, and the presentence investigation report has calculated sentencing guidelines consistent with those in the plea agreement. Under these guidelines, the defendant should be sentenced to imprisonment of from 37 to 46 months. In addition, under the plea agreement Seay is to forfeit a money judgment for $10,800, the amount of the bribe payments that were not recovered by the government.

## II. Argument

As the court is aware, it must impose a sentence based on the factors set forth in Title 18, United States Code, Section 3553(a). The government submits that the following statutory factors are most relevant to this case.

*The Nature and Circumstances of the Offense*

This was a very serious offense. Everett Seay was an elected official of the City of Pontiac, with responsibility for honestly representing its citizens. Instead, he readily accepted the opportunity, when offered, to take bribes in return for influencing the legislative activities of the city council. This was not a one time affair, either: Seay accepted six bribes, ranging in amount from $200 to $15,000, over an eighteen month period. The bribe payments totaled $25,800. (These payments were separate from the $15,000 that Seay took for his assistance in delivering a package of sham cocaine from a storage facility to the Pontiac airport, as alleged in Counts Four and Five of the indictment).

The sentencing guidelines adequately account for the circumstances of Mr. Seay's offense conduct, and a guideline sentence is fully warranted.

*History and Characteristics of the Defendant*

Everett Seay has one prior misdemeanor criminal conviction, and is scored as a Criminal History Category I under the U.S. Sentencing Guidelines.

The PSIR indicates that Mr. Seay has several existing medical conditions. (PSIR, ¶¶ 47-49). These conditions do not appear to be uncommon as measured against other criminal defendants sentenced in this district. There is no reason to believe that the Bureau of Prisons lacks either the facilities or the services to accommodate his health issues. See United States v. Carpenter, 359 Fed.Appx. 553, 558 (6th Cir. 2009) (affirming 108 month sentence and denial of defendant's motion for downward departure where the district court "acknowledged [his] poor heath and concluded that the BOP's facilities are equipped to treat him"); United States v. Clark, 469 F.3d 568, 571 (6th Cir. 2006) (affirming 360 month sentence where the district court "took into account" defendant's "age and medical condition"). To the degree that Mr. Seay's medical condition might be appropriate factors to consider in mitigation of punishment, those issues can be adequately accounted for by this court in selecting a sentence within the guideline range.

*Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, and Affording Adequate Deterrence*

Everett Seay's crime was serious. The ugly spectacle of an elected city official who violates his fiduciary responsibilities in return for numerous bribes, over an extended period of time, does untold damage to the faith of our citizens in the integrity and the fairness of their system of government.

The seriousness of this crime was further aggravated by the fact that Seay believed that the people who bribed him were drug dealers, whose gold business

6

was intended to be a front for money laundering. And further, Seay corrupted two of his friends to assist in his criminal activities, and sought to corrupt at least one other member of the city council.

Given these circumstances, principles of general deterrence and respect for the law support the imposition of a substantial sentence. Anything less than a significant prison sentence would send the message that conduct like this is tolerable. It is not.

It has been said that "the accomplice to the crime of corruption is frequently our own indifference." In our nation of laws the only recourse for Mr. Seay's betrayal of the public trust comes through the justice system now delegated to this court. In light of those factors, a substantial sentence of between 37 and 46 months is warranted.

*Sentences Contemplated by the Sentencing Guidelines*

The PSIR prepared by the U.S. Probation Department found, consistent with the plea agreement, that an advisory guideline range of 37 to 46 months applies to defendant's offense of conviction. (PSIR, ¶ 62). While a sentence within the advisory guideline range is not "per se reasonable," it does carry a presumption of reasonableness on appeal when the record shows that the district court considered the range as applied to a particular defendant in light of the § 3553(a) factors. *United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006).

*The Need to Avoid Unwarranted Sentencing Disparities*

Finally, imposition of a sentence within the advisory Guideline range best serves "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  Congress "sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct" prior to the Guidelines. *Rita v. United States*, 127 S. Ct. 2456, 2464 (2007).  Because "uniformity remains an important goal of sentencing," "Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities." *Kimbrough v. United States*, 128 S. Ct. 558, 573-74 (2007)(emphasis by Court).  The Guidelines "help to 'avoid excessive sentencing disparities,'" *Kimbrough*, 128 S. Ct. at 573-74, because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges," *Gall v. United States*,128 S. Ct. 586, 599 (2007), and because most defendants are sentenced within the Guideline Ranges.

A sentence within the guideline range would serve this purpose in this case. Sentences of the other defendants in this case are not a basis on which to determine Mr. Seay's sentence. Both of his codefendants pleaded guilty and cooperated in the investigation, thus justifying substantially lower sentences. Indeed, it is their cooperation and willingness to testify that has undoubtedly led to Mr. Seay's

8

decision to plead guilty. Moreover, their responsibility in this matter is qualitatively different from Mr. Seay's. Clanagan and Johnson were friends of Seay's who were enticed into this criminal activity by Seay, for little benefit to them but substantial financial benefit to Seay. So a substantially higher sentence for Mr. Seay is fully appropriate here.

Accordingly, an individualized consideration of Mr. Seay should result in a substantially higher sentence than that imposed on any of his codefendants. He has advanced no valid reason why this court should vary from the guideline range of 37-46 months.

### III. Conclusion

Based upon the foregoing, and consistent with Everett Seay's offense of conviction and the statutory sentencing factors, the government recommends that the court impose a sentence of 37 to 46 months incarceration, to be followed by a term of three years of supervised release. The government further requests that the court impose an order of forfeiture in the amount of $10,800 as part of its judgment.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney


 s/ Sheldon N. Light
SHELDON N. LIGHT (P28798)
Assistant U.S. Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226-2311
313.226.9732
Sheldon.Light@usdoj.gov

Dated: June 25, 2013

Certificate of Service

I hereby certify that on June 25, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the parties of record.

s/ Sheldon N. Light
SHELDON N. LIGHT (P28798)
Assistant U.S. Attorney

11